May it please the Court. Ben Barno on behalf of Appellants and Respondents to the Cross-Appeal. You can adjust that microphone there if you don't mind. We can hear you. Thank you. Better? Thank you. Your Honor, we're here today on what is a de novo consideration regarding the granting of 12b-1. We think on the where we respond is a cross-appeal with the suggestion that a pending 12b-6 should be granted. We obviously oppose that. I'll start with the 12b-1. First of all, this is a data breach case. I think everybody knows that by this point. We're at the junction here where the law has evolved to a degree and there have been a series of cases, all of which I respectfully suggest line up with the plaintiffs have here on their side, are not only the fair interpretations of Spokio, but in terms of courts of appeal, we have long-standing opinions from the Ninth Circuit, such as Adobe. We have Krotner, also from the Ninth Circuit. And from the Seventh Circuit, we have Lewert or P.J. Chang and Neiman Marcus. Also, there are others. Galleria, for instance. Interestingly, when you look at what the defendants have tried to make their case based on precedent, there's nothing left. Their linchpin, I would say, is Riley v. Ceridian. Facts are vastly different. There was no allegation there of an actual breach, and it's well dealt with in our papers. They also rely on Galleria. Unfortunately for them, but good for, I think, plaintiffs and justices, that it was my appeal, and it was reversed, and standing was found. Another one they rely on is Barnes and Noble. That's also my case, and that is no longer good law. Here we have the required injury in fact. There can be a little serious question about that. What is the injury in fact? The injury in fact is the violation of the rights that occurred with the actual breach. A coarse, coarse talk, a clapper, dry house talk about the imminent harm, and we have not only imminent, we have actual, and the actual is that the breach did occur. There is little doubt here that these materials, this information, PII, private information, personally identifiable information, was taken for bad purposes. It's silliness to suggest otherwise. Now, what the defendants have tried to do, and different from other cases, Marcus, or T.J. Maxx, which is a famous data breach case, is try to suggest they don't know. They use the word may. Well, it's just not credible, but having said that, it doesn't really matter. What happened with the defendant's approach is they tried to drag this case into merits. All that has to be determined is facially, i.e., what's on that complaint, and we reach it in every angle, every degree, every possibility. I don't really care if they want to tell a court or courts that they don't know if the material was stolen. It doesn't matter what they think or say. We alleged it, and the game stops there. Frankly- You think the game stops at theft? Absolutely. At the breach, and then the theft of the information. Absolutely. In fact, in this court's case, Carlson v. GameStop, the court recognized that that would be the situation. In another one, recently, I think it's Brightstop, close to the pronunciation, but in any event, the reference was the plaintiffs did not suggest that the information was, quote, access, close quote. Even if you take their statement, which is not relevant, that it may have been, after they offered credit monitoring for a year, that they accessed, but the reality is it was stolen, and again, it doesn't matter what they say, think, or put in their publication. We alleged it. That's all that's required. And so your theory is that because you've alleged the theft, that's the imminent harm? That is what I would say. In this case, we actually have more. We have Mr. Holmes, who satisfies an even greater scrutiny, and that is that he saw that he had a data breach, and that certainly satisfies the requirement. But he's the only one, though, right? That's all you need. Well, he's the only one in terms of having pled that actual data breach, where they accessed his account. We have another plaintiff, Mr. Hamph, who went ahead and canceled the checking account, but respectfully, that is all you need. The breach alone satisfies the injury, in fact. Secondly, to the extent that some courts might require a greater scrutiny, that doubles up on that. When you see cases, for instance, like a P.F. Chang, where they don't even know if they shopped at the particular store. Here, we allege they shopped at the store, the dates they shopped, great specificity, and all that is really required. Did the dates alleged correspond to the breach? Pardon me, sir? Did the dates alleged for the shopping predate the . . . Absolutely. Absolutely. By plaintiff, by plaintiff. Even those that merely were sent off to do the research, the examination, to quantify and stop the harm that has occurred. It's just classic. It's in line with every recent case that is out there. Again, Riley has nothing to do with this case. They recently cite Michaels. Michaels recognized the value of P.F. Chang and also the value of Neiman Marcus, the credibility and the precedential value of it, and differentiated its case to a situation that is different than we have here. To me, to grant the 12-B one on those facts, changes the law. What it does, it conflates merits with the facial examination, and it's just flat wrong. You can't do it. Now, what happened is when we were confronted with that, we did take an extra step, and we did it to try to satisfy things. The interesting part about that is it shuts down even the spurious argument that the defendant wants to make now. We went ahead and got affidavits. We didn't have to do it, but we did it to satisfy an erroneous example or, excuse me, standard by the that you have injury, in fact, or the actuality of it, and that squashes it. But again, we don't need that. Those were presented on the Rule 59? So those weren't considered by the district court? Well, it depends on the level they were considered. I think what she did to a degree when she denied the Rule 59, because what she said is that those did not indicate that any of the named plaintiffs were part of those particular breaches, but that is not needed. And again, we shouldn't have had to do that. We did it, frankly, to satisfy the erroneous path that the trial court took. Here today, it's basically presented in the record as reassurance to the court that sticking with all the other circuits, the 9th, the 11th, in Resnick versus Avment, the 7th in multiple cases, and now the 6th circuit, this court should not go out on something that is no longer the law and, quite frankly, never has been because the cases that they cite are on different facts or have been on different facts. To me, it's clear. I'm not sure quite what else to say, except with regard to the, unless the court has questions, I'll switch over to the Trial B6 attempt. To me, the Trial B6 is even worse than the Trial B1. Let's not do that. I mean, I don't understand why that's even a proper cross appeal. Thank you. They won in the district court, so I was surprised you didn't move to dismiss the cross appeal, but maybe I'm misunderstanding the procedure. Well, I would never suggest you misunderstood the procedure. I'd suggest that perhaps I did, but in any event, I will adopt the court's . . . Anyway, you can address it if you want to, but I did want to ask one thing first about the standing question. I hear you today saying the theft itself is the injury. Am I understanding you correctly? Because I thought your brief said there are things that flow from the theft, that is, the risk of harm, risk of harm in the future, and mitigation efforts, and that those are the injuries. Well . . . Which is it? Well, actually, what you just said is part of that, but not part of the other. The damage of that flow is a damage element. That, we really shouldn't have to prove that in terms of any kind of sufficient evidence. All we have to do is to state it, which we did, in terms of a 12-8-1. All you had to do is state what now? State that the damage has occurred, in terms of having a sufficient complaint. The damage that occurred here is you have the turning over of the private information, the time and money people were spent to check their accounts, and the other things that are associated with it, such as replacing their cards, etc. But those are elements of proof that come later. They don't relate to the 12-B-1. The 12-B-1, you only need to show the injury in fact, and actual or eminent harm under all the cases. And intangible can be concrete. What I'm trying to understand is whether your theory is when the moment the information was stolen, that's the injury, or whether you're saying as a result of the theft, your clients had to take these other steps, and the fact that they had to take those steps is the injury. Which is it, in your view? It depends on the facts of the case. In this particular case, we satisfy a higher standard, and that is you had the theft with malicious intent by thieves, where the risk is imminent, and in this case, the risk actually occurred. So in this particular case, sticking with this case, if one were to say the theft alone of private information is a breach enough, I would say we satisfy it in another case, we certainly satisfy it here. But here, the situation is a much step farther, because you actually have, it's coming to fruition. You have the risk of imminent risk, because you have thieves doing it. There's no issue about that. And we know what the purpose is. Recently, one thief was just sentenced for 27 years. It's in a public record, and I can go down the list. The one in TJ Mask got 25 years. They do it and take the risk, because they're using it and it has value. That happened here. So whether I subscribe to a looser standard or a relaxed standard in a different case, and I do, doesn't mean that's all we have here. We have much more. We have the actual and imminent harm in place, and that is part of the injury in fact. And we have causes of action that we've asserted that create rights. One can disagree as to whether or not some of those will ultimately result in the judgment, such as the implied contract, but they're here. And- In this case, how much time had passed between the breach and alleged theft and the filing of the complaint? By the time it got to the district court, it was ten months or more? Your Honor, as I stand here, I'm not sure, but my guess is the cases probably came pretty quick in terms of the filing of the litigation. I guess what I'm trying to get at here is after all the time passes, all you've got is Mr. Holmes. So it's, and if we sort of assume what this PI, what it's useful to the hackers for is to use their account numbers. Well, those will soon expire. In other words, as time passes, doesn't the injury dissipate? Well, a couple things. Number one, we don't know what we have other than what we've pled. And on a 12B1, we don't know what we have in terms of how many were impacted other than what we've pled. As far as the court is concerned, what I'm saying is, and our papers say, is what we've pled is adequate. Now, what Your Honor's getting into, the merits of it all, they refuse to answer discovery. They gave some objections. When this case goes back down properly, we'll find out the amount. They know. They know, have information, because there's cancer reports issued by Visa and MasterCard. But the reality is, at the pleading stage on a 12B1, we don't have to have that answer. Now, with regard to passage of time, evidence shows, and we have it in our papers, that these crooks, these and otherwise, can keep this information for five years and longer. They build records, accumulate it, and sell it. So all I'm- Is that the harm then? That's the risk of the harm that you're talking about, to follow up on Judge Colleton's question. The risk of harm has, one, occurred here. Number two, everybody in this class lives under it. Number three, it could be occurring in amounts that we're not aware of. And history would indicate, such as our small affidavit declarations from three small banks that has happened in those banks in high percentage numbers in some of them. One was, I think, 31%, one was a lower percent. These are higher numbers than Neiman Marcus. But that's why this case has to go on. If people are to be protected in these situations, you can't cut it off by conclusions and conflating merits with pleading. We have a right to move the case along on pleading, to have our discovery answered. They have an opportunity to file a motion for summary judgment later on. And that's how justice occurs, not by throwing it out precipitously against extant law. This, I respectfully suggest that this circuit should go out, almost all the circuits that have considered it, and in my view, all currently. And say that these people have a right to proceed on this case, and it's not properly discarded on a 12B1 or a 12B6. I see I'm running out, I was going to say three minutes, but I'm a little short now. Thank you. Thank you, Mr. Barnett. Mr. Wolkoff. Yes. Morning, your honors. May it please the court and counsel. My name is Harvey Wolkoff, and I'm appearing here on behalf of the super value and the Albertson defendants. As Judge Montgomery held, the plaintiffs don't have standing. And they don't have standing because they haven't met their burden of showing actual injury or future risk of injury that's imminent or certainly impending. We have, your honors, 16 named plaintiffs here. We have an allegation that there was a data breach purportedly at over 1,000 stores. And Judge Kelly said, all that you have, we're three years down the road, all that you have is homes. And we would suggest that the plaintiffs don't even have homes. And why don't they have homes? Number one, they did not allege below that Holmes sustained actual injury. There was no argument made before Judge Montgomery that Holmes had an actual injury. Nor did they argue, Judge Colleton, that a mere theft constituted injury. What they were arguing was that there was a breach and we have a risk of future injury that's certainly impending. That was their argument. And with respect to the one that I say they don't really have, Mr. Holmes, what's the story on him? He alleges, it's in paragraph 31, joint appendix 21. He alleges that he had one purportedly unauthorized charge. When Judge Montgomery decided this case, we were a year and a half out. Now we're three years out, and that's all that there is here. One purportedly unauthorized charge, and Mr. Holmes does not allege, and this is key. What he doesn't allege, he doesn't allege that he was unreimbursed. He doesn't allege such basic facts as the date of the purportedly fraudulent charge. He doesn't allege the amount. He doesn't even allege, as he's required to in order to show that it's fairly traceable. He doesn't say that it was from the intrusion or to respond to Judge Smith's question. He does not say that he shopped during the time period of the intrusion. The plaintiffs knew how to say that because they did say, with regard to many of the other plaintiffs, that they shopped during the time period of the intrusion. But Mr. Holmes, the only one that maybe they have, which they don't, they don't say, with respect to him, very noticeably, that he shopped during the period of the intrusion. So what do they have? They have an argument, this is what they said below, that there was a breach, and therefore we have the risk of future injury that's certainly impending. Well, is that what the Seventh Circuit has said, and counsel cites other circuits- At this point in the litigation? Your Honor, this case is as far from the Seventh Circuit cases that were cited by Mr. Barno as it could be. The Seventh Circuit cases, the Neiman Marcus case, Your Honor, you had 9,200 fraudulent charges, widespread fraud, and you had a phishing scam that came immediately on the heels of the breach. In the P.F. Chang's case, you had all of their stores purportedly were breached. You had attempts at opening up accounts in their name, in other words, identity theft, which you don't have here. Here, unlike, for example, in the Galleria case that Mr. Barno cited v. Nationwide, I argued that case below too. And completely different case, because there, Nationwide told the plaintiffs, we have a theft, and we recommend that you impose a security freeze on your credit. Which, by the way, costs about $20 to $30. They recommended that. There's no recommendation like that here at all. In fact, I'll get to a moment as to why the plaintiffs haven't even demonstrated that there was even a theft in this case. But Galleria v. Nationwide, it's not even pertinent to a- If there had been more claims of fraudulent charges or fraudulent use, would you say that's sufficient? Like in Neiman Marcus, that would be sufficient? You talk about the 9200. That be sufficient for standing? Your Honor, we don't even have to reach that question because we're so far away from it. Do I agree with the Neiman Marcus case, Your Honor? I could say theoretically I do, but it's not this case whatsoever. You know, Your Honor, in this case, they haven't even demonstrated that there was a theft. They haven't even alleged sufficiently that there was a theft. Why? They say in paragraph eight, they say in paragraph four, 40 of the consolidated amended complaint, there was a theft, or data was harvested. But what they never do is, they never provide, as required under Iqbal, the necessary facts to show that there was a theft. Instead, as Judge Montgomery correctly noticed, they pick and pick notification statutes of various states. And so they talk about, there was malware put on the SuperValue system. But what they left out is that also in those press releases, SuperValue and Albertson said, we're investigating, but we haven't been able to determine that, in fact, anything was taken. We're sending this to you at an abundance of caution. And we have no evidence that there's been any misuse whatsoever, none. Well, would this be a case that would require some discovery in order to determine if there's been theft? We would say no, Your Honor, and that's what the Iqbal case is about. You have a threshold level. Yes, it's under rule eight, but you have to make some allegations. First of all, that you have an actual injury or the risk of imminent injury, three years, we're here three years later almost, imminent injury, Your Honor, and without discovery, that's what the Iqbal case is about. You have to make sufficient allegations. You have to make sufficient allegations in your complaint that there has been a theft. And so they haven't even done that, let alone shown that they have actual injury or injury that's imminent. So even if they were relying upon this argument that I heard for the first time in response to Mr., I think, Judge Colleton's questions for Mr. Barno, even if they were arguing that theft's enough, which no case has held that theft's enough, they haven't even adequately alleged theft. What do you think? Do you theoretically agree with the Third Circuit in the Horizon Healthcare case? Are you familiar with that opinion? It's another one of Mr. Barno's cases, it was just decided earlier this year. But they said that a violation of one of the statutes by itself can be enough under Spokio. Or there was a concurring opinion that said an invasion of privacy because of the historical tradition of that. Protection can be enough, and that's similar to the implied contract argument here, I think. I know you said they didn't plead adequately a breach of an implied contract, but assuming they did, would that be enough to establish standing? No, Your Honor. Under Spokio, as Your Honor knows, you need to show an actual injury. And the question is whether or not Congress has established that actual injury through the statutes. With regard to any other theory other than implied contract, they've dropped them all. So there's no- What about implied contract? Well, with regard to implied contract, it wasn't argued below. It's interesting, they dropped the ones that they did argue, and they make an argument on implied contract that wasn't raised below. It wasn't dealt with by Judge Montgomery, it wasn't dealt by us, it was never, ever mentioned. Second of all, we would say, Judge Colleton, that they don't allege facts as required under Iqbal to show that there ever was an implied contract here between the parties. There are no facts alleged that show there was an offer. I mean, the basic fundamental requirements of having a contract, was there an offer, was there an acceptance, was there consideration? We can start just with consideration and knock out an implied contract because this was not a situation where SuperValue or Albertsons charged any more money to customers, whether they used a debit card, a credit card, or they paid cash. So there was no extra consideration. And there are quite a few cases that we've cited in our brief. Neiman Marcus, for example, on implied contract, held that there's no implied contract because there's no meeting of the minds. There's no consideration. The Lewitt v. P.F. Chang's case that Mr. Barnault cited. So the very cases that he cited have determined that there is no implied contract, Your Honor, in this particular area. This case, we sent in a letter to the court last Thursday because there was a case that was decided that is very similar to this case. And that case is Whalen v. Davis, you had a very similar situation. You had one. You had one plaintiff who said, my card, there was a data breach and my card was attempted to be used down in Ecuador a couple of times. But the court found there wasn't any harm, any injury, because the card was never used in a way that the plaintiff suffered something out of pocket. There was never any unreimbursed charge. Plus, there were no social security numbers or anything of that nature, just like in this case, there were credit card numbers. But you know what the plaintiff did in that case? Closed the credit card account. Now, you may say, well, that's salutary. Well, it doesn't cost anything to do. And our plaintiff here, Mr. Holmes, that's what he did. He closed his credit card account. Is that injury? No, it's the opposite of injury. Why? Because it means that nobody can use the card anymore. And that's what this- After the alleged injury, though. Well, very quickly, Your Honor, and Mr. Holmes closed his account here. And by definition, after that time period, he can't have injury. And you know what? He doesn't allege injury anywhere. And as I say, they didn't argue actual injury below. And the court also said, the Second Circuit in affirming the Eastern District of New York, that there weren't sufficient facts alleged with regard to risk of future injury. You know, here, you can look through paragraphs 18 to 31, and I respectfully invite you to do it. And all you will see is the same wrote statement for each plaintiff. Virtually the same verbiage for each plaintiff. After the breach, I monitored my account, and I spent time. I spent time monitoring my account. I spent time monitoring my account. So the Second Circuit, just last week, they had a decision that, in addition to the Riley v. Ceridian case, they found that even where you have allegations of a theft, there's no actual injury that's imminent, that's certainly pending, where you don't have any cognizable harm, you don't have any actual misuse. A card was presented at two different places in Ecuador, but you didn't pay any money. In terms of imminent risk, the court said in that case, two years have gone by, two years. And so how can you say that you're under imminent risk with two years going by? Here, as I said before, we have three years that have gone by. So I want to quickly turn, Judge Collington asked the question of, well, how could we even appeal? Yeah, well, are you thinking that because it was a dismissal without prejudice on the standing that you are entitled to file a cross appeal on- Yes, and that's exactly what I'm thinking and what we were thinking back at the time, Your Honor. Mr- I was thinking you wanted more pages. No, we weren't thinking- That's what I was thinking, and I had to read them all. No, we weren't, and we read the GameStop case, for example, which found that there was standing, there was an express contract there, though, that covered arguably on standing the subject matter. And this court went on to rule, well, there may be standing, but the contract actually didn't cover, there wasn't a breach of contract, and there was no cognizable injury there. So the court went on to consider on a 12B6 motion. And we say that, look, there's no standing here. I mean, this is such a thin read, this is the thinnest read of any case to have a class action with thousands, and thousands, and thousands of customers at all of these supermarkets on the basis of what? On the basis of virtually nothing. And certainly not actual injury or risk, that's certainly pending or that's imminent. That's not all. But with regard to, if you were to hold that there were standing, and you respectfully shouldn't, then the 12B6 is not all that complicated, we would submit. For example, all of the counts of the complaint can be dismissed because there's no cognizable injury. And when you allege things, as I said before, like implied breach of implied contract, or where you allege negligence, or even where you allege breach of consumer protection statutes, data notification statute. There has to be cognizable injury. There's no cognizable injury here. So you could dismiss on a 12B6 motion all of the counts of the complaint. Negligence, very simply, economic laws doctrine gets rid of negligence. Negligence per se, very simply. You can't rely as they do upon the FTC Act. Circumvent the no private right of action under the FTC Act simply by alleging, well, it's negligence per se. So the court could go on in the interest of judicial economy rather than sending it back to Judge Montgomery. The last thing I'll note is that Judge Montgomery did dismiss the complaint without prejudice. Were there actually injury in the last three years, the plaintiffs very easily could have filed a new complaint, and they haven't done that. The declarations were on the 59E, as Judge Kelly said, that wasn't appealed. Judge Montgomery's denial was not appealed. Thank you, Mr. Warren. Unless the court has more questions, my time is up. Thank you very much. Mr. Barnell, your rebuttal. Yes, Your Honor. What I heard was a lot of merits, a lot of lawyer testimony, and a lot of things that don't hold water. First of all, it's the height of arrogance to say in three years we've seen nothing. Really? Answer your discovery. They told this court that this case is different than Galleria because he argued it. Well, he was in the case, but he really didn't argue it. But having said that, he said in Galleria nationwide that they didn't recommend a security freeze. Really? Well, at JA 65, here's the letter that his client and the other defendant's client sent out. Consumer Identity Protection Reference Guide, in addition to carefully reviewing their financial institution credit card statements, Super Valley recommends that its customers consider these additional steps, security freeze. That lawyer testimony was wrong, so was all the rest of his. But here's what's important. They want to wipe out the ability to plead in accordance with law. They want this court to take a defendant's version without discovery. It's flat wrong. Three years, how do we know what they have? How many people apply for the credit monitoring? What do they have in their records? They object to discovery, they don't produce it, send us back down and we'll get it. And you know what, they can win on a motion for summary judgment if they think they're right. Their definition of actual harm is way different than the law. When this data breach occurs with malicious intent, that's the actual harm. And in this case, even supporting more stringent requirements, there is evidence that access was made. We also have people mitigating. They say, Mr. Hanf, well, he closed his account. Your time's expired. Thank you. Mr. Hanf was mitigating. We thank you, Your Honor. Your Honors. Court wishes to thank counsel for your presence and argument this morning. We'll take your case for an advisement and render decision in due course. Thank you.